# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

**JANE DOE**

           Plaintiff,                          **COMPLAINT FOR DAMAGES**

    v.

                                              **CIV. NO.:**

**BURKE COUNTY PUBLIC SCHOOLS**
**BOARD OF EDUCATION, KATHY AMOS,**
**WENDI CRAVEN, DAVID BURLESON,**
and **MICHAEL ANDREW ALEXANDER,**

           Defendants.

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      In June 2012, the European Police ("Europol") intercepted a child pornography syndicate operating in Spain and discovered child abuse videos and images taken of little girls in Burke County Public Schools ("BCPS") that had been distributed worldwide. The girls were filmed inside elementary school classrooms causing Europol agents to immediately contact the U.S. Embassy and the Federal Bureau of Investigation ("FBI"). State and federal agents moved swiftly to arrest a third-grade teacher at BCPS's Hildebran Elementary School ("Hildebran"), Defendant Michael Andrew Alexander ("Alexander"). Defendant Alexander has since been sentenced to over four decades of incarceration for horrific misconduct.

2.      Throughout his twelve years as a BCPS teacher at Glen Alpine Elementary School ("Glen Alpine") and, later, Hildebran, Defendant Alexander was allowed to excuse young girls from class and school activities and keep them with him long enough to engage in sex acts with them, and, among other atrocities, create and distribute child-abuse images. Upon

information and belief, Defendant Alexander uploaded, downloaded, copied, and distributed sexually deviant images of the children to a worldwide audience of sexual degenerates and child-pornography enterprises.

3.     Plaintiff Jane Doe ("Ms. Doe") was eight years old when Defendant Alexander began sexually abusing and filming her in school, which occurred during the 2006–2007 school year.

4.     Ms. Doe, then in third grade, was made to drink concoctions containing his semen, which he called "truth serum."

5.     Prior to that time, Defendants Kathy Amos ("Amos") and David Burleson ("Burleson"), who were school administrators, became aware of Defendant Alexander's misconduct when they received complaints from a student's mother during the 2004–2005 school year.

6.     That mother complained that Defendant Alexander had taken unauthorized, deviant photographs of her child while in school at Glen Alpine, requiring her to pose alone, pull back her blouse, roll up her pant legs, and wear a wig.

7.     Upon information and belief, Defendant Amos also observed Defendant Alexander at or around that time sitting with a young female student on a bus in an inappropriate manner.

8.     Defendants Amos and Burleson were deliberately indifferent to the mother's complaint and their observations, conducted no meaningful investigation, failed to place such information in Alexander's personnel file, and instead allowed Defendant Alexander to continue teaching within the BCPS system, including a transfer to Hildebran for the 2005–2006 school

year, which placed him under the supervision of Hildebran Principal Wendi Craven a/k/a Wendi Barber a/k/a Wendi Craven Barber ("Craven").

9.     Defendant Craven similarly ignored warning signs of Alexander's conduct, including the unusual dress patterns of female students in Alexander's class and his open displays of physical affection for young female students. Defendant Craven also failed to supervise Alexander's presence at the school before, during, and after school hours, giving him free reign to isolate and abuse students.

10.     As a result, numerous other children were—for years—abused, and numerous children who had been abused were—for years—abandoned and condemned to suffer on their own without professional or family help, support, or counseling.

11.     Upon Defendant Alexander's subsequent arrest for multiple counts of child pornography, statutory sex offenses, and indecent liberties with minors, he freely confessed to sex offenses with at least eight female students and provided the names of five students that he forced to ingest his semen. A subsequent investigation by the North Carolina State Bureau of Investigation ("NCSBI") revealed he abused at least thirty-three confirmed students and perhaps as many as fifty in total.

12.     Defendant Alexander confessed he forced Ms. Doe to drink his semen.

13.     Shortly after Alexander's arrest, NCSBI identified Ms. Doe as a possible subject of several images and videos recovered from Alexander.

14.     In one video, Ms. Doe is wearing a clearly identifiable Hildebran t-shirt. Both investigators and Ms. Doe's parents confirmed her identity in this video.

15.     After confirming Ms. Doe's presence in the video, an NCSBI special agent informed Ms. Doe's parents that based on the agent's review of other videos recovered from

Alexander, including one in which Ms. Doe is wearing the same outfit, Ms. Doe was filmed ingesting Alexander's semen.

16. Ms. Doe recalls a specific incident of abuse, in which she and a female classmate were alone in Alexander's classroom before school hours and forced to drink semen together. Defendant Alexander admitted by name to abusing that female classmate by forcing her to drink his semen.

17. A medical expert who evaluated Ms. Doe concluded to a reasonable degree of medical certainty that Ms. Doe suffered multiple episodes of abuse, based on a review of documents received, Alexander's admissions, and the particular nature of Ms. Doe's memory defects, which are typical of victims of trauma.

18. Defendants Amos's, Craven's, and Burleson's deliberate indifference and lack of clear policies violated federal and state law requiring them to protect students, including Ms. Doe. Despite complaints and warning signs, Defendants Amos, Craven, and Burleson did not supervise Alexander, investigate complaints, disseminate policies or procedures meant to protect students, or keep records. That, and other deliberate indifference and wrongdoing, violated duties owed to this young, vulnerable child under federal and state law.

19. Denied help, further reporting, or investigation of former and subsequent complaints regarding Defendant Alexander, Plaintiff suffered for years following her abuse without any professional or family help, support, or counseling, while Defendant Alexander continued to abuse other female students.

20. Plaintiff brings this civil action against Defendants for various violations of the Educational Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 *et seq.*; the Fourteenth

4

Amendment to the United States Constitution (under 42 U.S.C. §§ 1983); the North Carolina Constitution, and other provisions of North Carolina law.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, including: claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 *et seq.*; and claims for deprivation of civil rights under 42 U.S.C. § 1983 and the United States Constitution.

22.     This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3)–(4) because this litigation involves claims for deprivation of civil rights under 42 U.S.C. § 1983.

23.     This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 13 U.S.C. § 1367, as they form part of the same case or controversy stemming from the allegations that form the basis of the civil rights and other federal question claims in this action.

24.     Venue in this District is proper as all parties are located in this District, and all of the relevant facts occurred in this District.

## PARTIES

25.     Plaintiff, Ms. Doe, is a resident of the State of North Carolina residing in Burke County during childhood and at all relevant times a minor student at Hildebran. *See* Ex. A to Plaintiff's Partial Consent Motion for Leave to Proceed Under a Pseudonym. Plaintiff has filed a Partial Consent Motion for Leave to Proceed Under a Pseudonym in this matter for the sole purpose of protecting her identity and dignity in this highly personal and sensitive matter as the victim of sexual abuse and a minor student at all relevant times.

26. Hildebran, Glen Alpine, and BCPS were at all relevant times run by Defendant Burke County Public Schools Board of Education ("School Board"), a corporate body granted powers by state law. Defendant School Board has the authority to sue or be sued under N.C. Gen. Stat. § 115C-40.

27. The State of North Carolina has delegated to Defendant School Board the "general control and supervision of all matters pertaining to the public schools in [its] respective local school administrative unit[] . . . ." N.C. Gen. Stat. § 115C-36. The School Board is charged with "execut[ing] the school laws in" its district, N.C. Gen. Stat. § 115C-40, so as to, inter alia, "provide students with the opportunity to receive a sound basic education . . . within [its] respective local school administrative unit[], as directed by law." N.C. Gen. Stat. § 115C-47(1).

28. Defendant School Board is a recipient of federal funds within the meaning of 20 U.S.C. § 1681.

29. Defendant Kathy Amos is, upon information and belief, a resident of Burke County, North Carolina. Defendant Amos is sued in her individual capacity and in her official capacity to the extent that she was a final policymaker on abuse response, student health and safety, or other related issues at Glen Alpine, where she was at all relevant times the executive head of the school under North Carolina law. N.C. Gen. Stat. § 115C-5(7).

30. At all times relevant to this Complaint, Defendant School Board employed Defendant Amos as a Principal at Glen Alpine. Upon information and belief, Defendant Amos is currently employed as Superintendent of Yancey County Schools in North Carolina.

31. Defendant Wendi Craven is, upon information and belief, a resident of Burke County, North Carolina. Defendant Craven is sued in her individual capacity and in her official capacity to the extent that she was a final policymaker on abuse response, student health and

safety, or other related issues at Hildebran, where she was at all relevant times the executive head of the school under North Carolina law. N.C. Gen. Stat. § 115C-5(7).

32.     At all times relevant to this Complaint, Defendant School Board employed Defendant Craven as a Principal at Hildebran. On information and belief, Defendant Craven is currently employed as the Principal of Hickory High School in Hickory, North Carolina. Between 2019 and 2024, she served as a board member of the Defendant School Board, for which she won election in 2019.

33.     Defendant David Burleson was, upon information and belief, at all relevant times, a resident of Burke County, North Carolina. Defendant Burleson is sued in his individual capacity and in his official capacity to the extent that he was a final policy maker on abuse response, student health and safety, or other related issues at Glen Alpine and Hildebran, for which he was at all relevant times superintendent under North Carolina law. N.C. Gen. Stat. § 115C-5(8).

34.     At all times relevant to this Complaint, Defendant School Board employed Defendant Burleson as superintendent of BCPS. On information and belief, Defendant Burleson is presently retired from his career in education.

35.     Defendant Michael Andrew Alexander was, upon information and belief, at all relevant times, a resident of Burke County, North Carolina. Defendant Alexander is currently serving a 49.5-year sentence at the North Carolina Department of Adult Correction's Nash Correctional Institution in Nashville, North Carolina.

36.     At all times relevant to this Complaint, Defendant School Board employed Defendant Alexander as an elementary school teacher, including at Glen Alpine from 2001 to 2006 and Hildebran from 2006 to 2012.

## GENERAL ALLEGATIONS

37.     Plaintiff, now an adult, attended Hildebran for kindergarten, first grade, and third grade.

38.     During the 2006–2007 academic year, Defendant Alexander was Plaintiff's third-grade teacher at Hildebran. Defendant Alexander, under color of law, used his authority position to repeatedly separate and confine Plaintiff before and during school hours to sexually abuse, photograph, videotape, and otherwise criminally mistreat her. Upon information and belief, such misconduct included:

       a.     mixing his semen with grape juice, filming Plaintiff drinking the concoction he called "truth serum," and uploading and distributing those images via the internet to pleasure other sexual deviants around the world;

       b.     instructing Plaintiff to wear high-heeled boots to school so he could make suggestive and sexually deviant movies and photographs of her, which he distributed via the internet to sexual deviants around the world; and

       c.     forcing vile sex acts upon Plaintiff, which he filmed and distributed via the internet to sexual deviants around the world.

39.     Defendant Alexander, under color of law, controlled Plaintiff during school hours and on school premises, regularly using his role and authority as a public-school teacher to excuse her from other classes and school activities and falsely imprison her in a room where he would abuse her and create child-abuse images, some of which would be distributed worldwide.

40.     Defendant Alexander, under color of law, also encouraged students to come to his classroom before normal school hours and used this time to abuse Plaintiff and other female students.

41.     BCPS officials and employees adopted and perpetuated a practice and de facto policy of allowing Defendant Alexander's repeated exercise of control over Plaintiff's and other preadolescent girls' activities at school, allowing him to unilaterally excuse her and other preadolescent girls from other teachers' classes and school activities.

42.     Plaintiff was not the only BCPS student abused by Defendant Alexander during school hours and on school grounds. Upon information and belief, Defendant Alexander's heinous misconduct with BCPS students dates to at least 2001 and includes as many as fifty victims. Upon information and belief, that misconduct includes, among other things:

    a.    forcing vile sex acts on children as young as seven years old, which he may have filmed and distributed via the internet to sexual deviants around the world;

    b.    forcing young girls to engage in sex acts with each other, which he may have filmed and distributed via the internet to sexual deviants around the world;

    c.    downloading, uploading, and distributing films and photographic images via the internet of girls as young as four years old being raped by men;

    d.    forcing young girls to drink his semen, in treats and concoctions he called "truth serum," which he may have filmed and distributed via internet to sexual deviants around the world;

    e.    ejaculating into boots, and then filming girls walking around in them as he told them they had "seamen legs," and uploading and distributing those images to pleasure other sexual deviants around the world; and

    f.    threatening his young victims that if they told their families or anyone else

9

about the movies he made or the things he did to them that he would come
to their house and kill them and their families.

43.     Defendant Alexander's sexual and child abuse of Plaintiff includes misconduct
that is nearly identical to the heinous crimes he carried out against Plaintiff's classmates. *See
P.B. v. Burke Cnty. Pub. Schs. Bd. of Educ.*, Case No. 12-cv-334 (W.D.N.C.); *A.B. v. Burke
Cnty. Pub. Schs. Bd. of Educ.*, Case No. 13-cv-09 (W.D.N.C.); *R.L. v. Burke Cnty. Pub. Schs. Bd.
of Educ.*, Case No. 1:13-cv-227 (W.D.N.C.); *M.M. v. Burke Cnty. Pub. Schs. Bd. of Educ.*, Case
No. 13-cv-204 (W.D.N.C.); *A.M. v. Burke Cnty. Pub. Schs. Bd. of Educ.*, Case No. 1:13-cv-279
(W.D.N.C.); *T.A. v. Burke Cnty. Pub. Schs. Bd. of Educ.*, Case No. 1:13-cv-278 (W.D.N.C.).

44.     During the 2004–2005 school year, while employed at Glen Alpine, Defendant
Alexander isolated a young female student from others, forced her to roll her pant leg up, put on
boots, pull her shirt back, and wear a wig. Defendant Alexander then took pictures of her posing
from a polaroid camera he kept hidden in a paper bag. The child described this experience to her
mother.

45.     The child's mother went immediately to Glen Alpine and complained to
Defendant Amos, who brought Defendant Alexander into her office to hear the complaint with
her. The mother demanded that the photographs be given over to her, and she expressly
complained about the inappropriate, deviant conduct. Defendants Alexander and Amos did not
produce the photographs, instead instructing the mother to return to school the next day to obtain
them. The mother returned to the school the following day to retrieve the photographs, but they
were not provided to her and the mother's requests to speak with Defendant Amos or Defendant
Alexander were denied. The mother was told that the photographs had been destroyed and that
the school considered the matter closed.

46.     The mother then immediately complained to Defendant Burleson. Defendant Burleson promised to look into the matter, but the mother was never told the results of Burleson's investigation nor allowed to view the photographs. The school removed the mother's daughter from Defendant Alexander's classroom. But Defendant Alexander continued teaching at the school, continued having access to young girls, and continued abusing them.

47.     Defendants Amos and Burleson did nothing to investigate or report this mother's complaint. Burleson later admitted that all he had done was inform Amos that he received a call from a "disgruntled parent," and that, because the mother had not complained further, he assumed the mother must have been satisfied.

48.     After Alexander's arrest, Amos told NCSBI investigators that, during a meeting with the mother, Alexander had shown both Amos and the mother a single photo which consisted of the mother's child by herself, wearing a costume that was worn in a skit for a school play. Amos subsequently testified that she saw multiple photos during this meeting, which were group photos of students rehearsing a school play. The mother does not recall being shown any photo during this meeting, and neither of these contradictory descriptions match the child's complaint.

49.     During the same school year, Defendant Amos attended a field trip to the eastern North Carolina coast with Defendant Alexander and fifth-grade students. During this trip, Defendant Alexander showed a pattern of sustained close contact with a young female student, including sitting with her on a chartered bus ride. Defendant Amos warned Alexander that it was "probably not in his best interest to be sitting with a young lady on the bus ride" and prohibited the two from sitting together, but made no further investigation and did not make note of this incident in Alexander's personnel file. Amos told NCSBI investigators that she was not scolding Alexander, but only warning him that his actions could be perceived by others as wrong. Despite

this comment, Amos further claimed that she saw no connection between this incident and the mother's complaint about photos.

50.     Following those incidents, at the end of the school year, Defendant Alexander moved from Glen Alpine to Hildebran, where he served as a fifth-grade teacher for the 2005–2006 school year, and then as a third-grade teacher from the 2006–2007 school year until his arrest in 2012.

51.     Defendants Amos and Burleson, who were on notice of Alexander's misconduct, did nothing to inform Defendant Craven, who served as Principal of Hildebran at the time of the transfer and through the period in which Plaintiff was abused.

52.     Defendant Craven did not inquire into Alexander's history when he was hired at Hildebran, performing no interview, background check, reference check, nor inquiry with either Defendants Amos or Burleson when Alexander suddenly transferred to Hildebran.

53.     When Defendant Craven hired Alexander for the 2005–2006 school year, she did not have an opening for a new third-grade teacher. Defendant Craven instead made an agreement with Alexander that he would teach fifth grade for one year, and then, in the 2006–2007 school year, Craven would return him to teaching third grade because "that's the grade you really like to teach."

54.     After Alexander resumed teaching third grade for the 2006–2007 school year at Hildebran, he resumed a pattern of regularly isolating female students in his class before, during, and after school hours.

55.     Defendant Craven failed to monitor or exercise control over Alexander's use of the school or interactions with students during these periods of time.

56. On several of these occasions, Alexander was able to use his position as Ms. Doe's third-grade teacher to isolate and abuse her before school hours. Ms. Doe recalls at least one such incident of abuse, the details of which are confirmed by Alexander's confession.

57. Alexander's pattern of grooming girls for abuse was visible even during moments when the girls were not secluded. In many of the videos recovered by investigators, Alexander's young female victims are seen wearing distinctive boots, typically knee length or high-heeled, into which Alexander would sometimes ejaculate. Many of Alexander's confirmed female victims describe him specifically requesting they wear boots to school. A box of boots was also discovered in Alexander's classroom.

58. During an interview with NCSBI investigators, Ms. Doe's parents recalled they received a phone call from an unnamed Hildebran administrator noting that their then eight-year-old daughter had worn her teenage sister's heeled boots to school despite being far too big and not age appropriate for an elementary school student.

59. Alexander was also given special permission to use Hildebran facilities outside of normal school hours by acting as a drama teacher and directing school plays. Alexander would frequently use the pretext of rehearsing for these plays to lure students to spend time alone in his classroom, and to wear "costumes" that included such boots.

60. Despite granting Alexander permission to use the school outside of regular school hours, Defendant Craven did not investigate or monitor his actions during these periods of time, nor did Craven act in response to Alexander's visible signs of grooming his female students during school hours. Even after Alexander's arrest, Craven commented that Alexander's tendency to dress students in costumes was a sign of his good teaching.

61.     During her time as Alexander's supervisor, Defendant Craven noticed that Alexander was unusually physically affectionate with female students and would regularly hug them or receive hugs from them. Defendant Craven did not reprimand Alexander for this or note it in his personnel file, instead commenting that students "loved him" and that "if you were a third-grader, you would enjoy being in his class because it was fun."

62.     Despite these warning signs, when Alexander was arrested and his pattern of sexual abuse was revealed, both Craven and Amos told investigators that they had never seen anything inappropriate from him. Amos told a NCSBI investigator that Alexander was "a great teacher."

63.     Defendants Amos, Craven, and Burleson had the authorities, duties, and obligations under law and BCPS regulations to take action to protect students, including Alexander's first reported victim at Glen Alpine.

64.     Defendants Amos, Craven, and Burleson were deliberately indifferent to complaints about Defendant Alexander, Defendant Amos's own observations of Defendant Alexander's misconduct with students, and the circumstances in Defendant Alexander's classroom. Like others at BCPS, Defendants Amos, Craven, and Burleson adopted the de facto policy of allowing Defendant Alexander to proceed unchecked, without taking any action whatsoever to investigate, report, document, or otherwise follow up on complaints of misconduct in any meaningful way.

65.     Defendant School Board created a dangerous situation for Ms. Doe and other students by adopting practices and de facto policies that gave Defendant Alexander the power and authority, and allowing him to exercise it unchecked, to remove preadolescent girls from

regular curriculum and activities and confine them with him long enough for him to abuse and film them.

66.     An expert review of BCPS's district policies at the time found that between 2001 and 2010, BCPS had no policies or regulations protecting students from sexual misconduct whatsoever. The failure to institute and promulgate such policies to staff constituted a clear violation of Defendant School Board's and Burleson's obligations under the legal standard of care under the Fourteenth Amendment, Title IX, and North Carolina law, including the Code of Ethics for North Carolina Educators adopted by the State Board of Education, June 5, 1997.

67.     When asked about the failure to institute clear policies to prevent the sexual abuse of children, Defendant Burleson stated that his policy was that principals should use a "funny tummy test," where principals and school staff had no obligation or procedure to report misconduct but would instead simply follow their own instincts about what behavior was inappropriate and how to respond. This vague and legally insufficient standard empowered Alexander to abuse children.

68.     Upon information and belief, no BCPS teacher or principal was ever informed about Burleson's "funny tummy" standard.

69.     In 2010, after Alexander had already abused Ms. Doe and dozens of other students, BCPS finally instituted a formal policy manual.

70.     The BCPS Policy Manual, "Staff-Student Relations" (Policy 4040 – Issued Date: April 22, 2010), expressly mandates that "[a]ny employee, who has reason to believe that another employee is inappropriately involved with a student, [including entering into a sexual relationship with any student], is *required to report this information to the superintendent*."

71.     The BCPS Policy Manual, "Discrimination, Harassment and Bullying Complaint Procedure" (Policy 4015 – Issued Date: September 20, 2010), mandates that "[a]ny employee who . . . has reliable information or reason to believe that an individual *may* have been discriminated against, harassed, or bullied in violation of policy 4021 *must* report the offense *immediately*" to an individual designated in Policy 4015. These designated individuals include, among others, Defendant Burleson, who was Defendants Amos' and Craven's immediate supervisor; Defendants Amos and Craven themselves, the Principals of Glen Alpine and Hildebran, respectively, during relevant periods of time; BCPS's director of human resources; and BCPS's Title IX coordinator.

72.     The BCPS Policy Manual, "Prohibition against Discrimination, Harassment and Bullying" (Policy 4021 – Issued Date: March 26, 2010), expressly prohibits, among other things, sexual harassment, including "conduct [that] is sufficiently severe, persistent, or pervasive that it has the purpose or effect of unreasonably interfering with . . . a student's educational performance, limiting a student's ability to participate in or benefit from an educational program or environment, or creating an abusive, intimidating, hostile, or offensive . . . education environment." Under Policy 4021, such sexual harassment can be from employee to student, and "[e]mployees are required to report any actual or suspected violations of this policy."

73.     The BCPS Policy Manual, "School Safety" (Policy 4200 – Issued Date: April 29, 2010), expressly mandates that school staff "share in the responsibility to take reasonable precautions and safety measures to create and maintain safe schools. . . . [and] assure the safety of students on school grounds . . . before, during, and after school." Policy 4200 mandates that "[s]taff *must report immediately to the principal* any student's information or their own observation of unusual or suspicious behavior or acts of violence."

74.     The BCPS Policy Manual, "Child Abuse – Reports and Investigations" (Policy 4240 – Issued Date: March 26, 2010), expressly states that "[a]ny school employee who knows or has cause to suspect child abuse or neglect is legally required to report the case of the child to the director of social services. The employee also will report the case immediately to the principal. Any doubt about reporting a suspected situation will be resolved in favor of reporting and the report will be made immediately."

75.     The BCPS Policy Manual, "Code of Ethics and Standards of Professional Conduct for Educators and Staff" (Policy 7300 – Issued Date: March 26, 2010, Revised May 9, 2011), is substantially derived from the "Code of Ethics for North Carolina Educators adopted by the State Board of Education, June 6, 1997," and expressly mandates:

> ALL STAFF MEMBERS . . . [b]e familiar with, support, and, where appropriate, enforce board policies, administrative procedures, school rules and applicable laws; [a]ttend to the safety and welfare of students . . . ; [a]ddress or appropriately direct any complaints concerning the schools . . . ; [p]rotect[] students from conditions within the educator's control that circumvent learning or are detrimental to the health and safety of the students . . . ; [and] take[] action to remedy any observed violation of the Code of Ethics for North Carolina Educators . . . .

76.     According to an undated BCPS "Communication Plan," "[t]he Burke County Public School System is a responsible guardian for the children in its care." Upon information and belief, a same or similar policy was in effect at all times relevant to this Complaint.

77.     Both before and after instituting these provisions, Defendant School Board adopted and perpetuated a de facto policy of allowing teachers such as Alexander to remove preadolescent girls from school activities, confine them with him, and abuse them without inquiry regarding the removal or confinement.

78.     Further, both before and after instituting these provisions, Defendant School Board failed to adequately train Defendants Amos, Craven, and Burleson, and other employees,

on how to respond to children's reports of inappropriate touching by teachers, or to adequately monitor, watch for, and prevent inappropriate detainment by a teacher of individual students isolated in a classroom. Defendant School Board's failure to train constituted deliberate indifference towards the likelihood that constitutional violations would result, and Defendant School Board was deliberately indifferent towards the obvious need for such training.

79.     Upon information and belief, Defendants Amos, Craven, and Burleson were also deliberately indifferent to and adopted and perpetuated the practice and de facto policy that allowed Defendant Alexander's longstanding practice of exercising control over preadolescent girls, excusing them from other classes and school activities, and confining them for extended periods sufficient to sexually assault, photograph, and videotape them. That policy, practice, and deliberate indifference resulted in Ms. Doe being continually sexually assaulted, videotaped, isolated, and threatened, and caused serious, permanent physical and psychological injuries.

80.     On Wednesday, June 13, 2012, after being contacted by the FBI and the NCSBI, the Burke County Sheriff's Office arrested Defendant Alexander. Defendant Alexander was then removed from his teaching post.

81.     Following Alexander's arrest, while NCSBI and FBI agents retraced his conduct, Defendants Amos and Craven were interviewed by investigators and shown photos and videos recovered from Alexander's computer. Defendant Craven was shown a video of a child yet to be identified from the recovered videos. Defendant Craven explicitly identified the child in the video as Jane Doe.

82.     Since Defendant Alexander's arrest, Defendant School Board has refused to offer any counseling, assistance, or meaningful information of any kind to Ms. Doe and her family.

83. Defendant Alexander was charged under North Carolina criminal law for multiple felony sex offenses involving minors dating back to 2001, covering the duration of his tenure and access to preadolescent girls at BCPS.

84. Following Defendant Alexander's arrest, Defendant School Board was deliberately indifferent to the heinous harm, sexual abuse, and injuries caused to Ms. Doe.

85. Defendant Alexander admitted his guilt and is currently serving a 49.5-year sentence at the North Carolina Department of Adult Correction's Nash Correctional Institution in Nashville, North Carolina.

86. On information and belief, Defendant School Board has waived any immunity it might otherwise be entitled to through the purchase of liability insurance.

87. Before the sexual assaults and abuse began, Ms. Doe was a bright and eager young student who was academically advanced relative to her peers. Ms. Doe has been severely traumatized by physical, psychological, and sexual abuse. She suffers ongoing emotional distress and post-traumatic stress that has had a pronounced effect on her relationships, academic performance, career, and daily life.

88. In the professional opinion of Dr. Eileen Ryan, Professor of Psychiatry and Behavioral Health and Vice Chair of Clinical Services at The Ohio State University College of Medicine and Wexner Medical Center, Ms. Doe meets DSM-5-TR criteria for both Post-Traumatic Stress Disorder ("PTSD") and acute recurrent episodes of Major Depressive Disorder ("MDD"), where the persistence, severity, and timing of her symptoms are traceable to being abused by Defendant Alexander in a classroom setting during her third-grade academic year.

19

89.     Ms. Doe will, for the foreseeable future and the rest of her life, need therapy for her injuries. The great psychological and emotional harm caused to Ms. Doe by these events restricted her access to BCPS's educational opportunities.

## COUNT I
### Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 *et seq.*
### (Defendant School Board)

90.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

91.     Defendant School Board was on notice of Defendant Alexander's sexual misconduct towards Ms. Doe. Defendant School Board, by its action and inaction, created a climate whereby criminal misconduct was tolerated, thus encouraging repeated misconduct and proximately causing injury to Ms. Doe.

92.     Defendant School Board, through its agents, Defendants Amos, Craven, and Burleson, had actual knowledge of the sexual assaults, exploitation, discrimination, and harassment Defendant Alexander was perpetrating against BCPS's young children on school grounds during long periods of time when he used his authority to seclude himself with them.

93.     BCPS agent(s) with this knowledge, including Defendants Amos, Craven, and Burleson, had the authority and duty to terminate Defendant Alexander and to take corrective action to end or prevent the sexual abuse, exploitation, discrimination, and harassment.

94.     Apart from Ms. Doe's vulnerable status as a third-grade child, and the special relationship extant under law between her and Defendants School Board, Amos, Craven, and Burleson, as employees and agents of BCPS, Defendants Amos, Craven, and Burleson had explicit, affirmative, and mandatory duties under *no less than six* BCPS Policy Manual provisions (*see* Policies 4015, 4021, 4040, 4200, 4240, and 7300 *supra.*) to report, investigate, or

otherwise take action to protect Ms. Doe when they were aware of, or had any reason to believe, the inappropriate conduct being committed by Defendant Alexander.

95.     The sexual abuse, exploitation, discrimination, and harassment inflicted on Ms. Doe by Defendant Alexander effectively barred her access to an educational opportunity and benefit.

96.     Defendant School Board acted with deliberate indifference, including through its agents, Defendants Amos, Craven, and Burleson, towards Ms. Doe's rights to a safe and secure education environment, thus materially impairing her ability to pursue her education at BCPS in violation of the requirements of Title IX, by, inter alia:

        a.      failing to protect Ms. Doe or other young girls despite complaints, and the knowledge that Defendant Alexander over a period of years regularly excused her and other young girls from classes and school activities and confined them with him long enough to sexually abuse them and create and distribute child-abuse images; or was deliberately indifferent thereto;

        b.      allowing Defendant Alexander to continuously and repeatedly remove Ms. Doe and other young girls from school activities and confine them with him long enough to sexually abuse them and create and distribute child-abuse images; or was deliberately indifferent thereto;

        c.      allowing Defendant Alexander to continue teaching young girls, including Ms. Doe, and having direct and unsupervised access to and control over her, notwithstanding complaints; or was deliberately indifferent thereto;

        d.      failing to follow or enforce numerous express mandates in the BCPS Policy Manual concerning Ms. Doe and other students' complaints

concerning Defendant Alexander's inappropriate conduct with them; or was deliberately indifferent thereto;

e. failing to inform Ms. Doe's family, and other female students and their families, of the danger posed by Defendant Alexander to young girls when he was repeatedly allowed to exercise control over them, excuse them from other classes and school activities, and confine them with him long enough to sexually abuse and create and distribute child-abuse images; or was deliberately indifferent thereto;

f. creating a climate that tolerated sexual assault, exploitation, abuse, and other misconduct, and that tolerated the complete disregard of reports of sexual misconduct by teachers or the unusual, dangerous conduct engaged in by Defendant Alexander over a period of years; or was deliberately indifferent thereto; and

g. through other actions, inactions, and deliberate indifference.

97. As a direct and proximate result of this misconduct and deliberate indifference, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. past, present, and future physical and psychological pain, suffering, and impairment;

b. medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. impaired educational capacity;

d. attorneys' fees and costs; and

e.      such other and further relief that this Court deems just and proper.

98.     Ms. Doe respectfully requests the Court grant the relief she is entitled, as
enumerated in the preceding paragraph, to the extent allowable by law.

**COUNT II**
**Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681 *et seq.***
**(Defendant School Board)**

99.     Plaintiff incorporates all preceding paragraphs into this Count by reference as
though fully restated herein.

100.    By the action and inaction after the Burke County Sherriff arrested Defendant
Alexander, Defendant School Board acted with deliberate indifference to the rights of Ms. Doe
and other female students to a safe and secure education environment. Defendants materially
impaired Ms. Doe access to educational opportunities and benefits at BCPS in violation of the
requirements of Title IX, by inter alia:

a.      failing to provide, offer, recommend, or coordinate adequate health,
psychological, counseling, and academic assistance and services to Ms.
Doe after she was sexually assaulted, exploited, and abused by her third-
grade teacher; or being deliberately indifferent thereto;

b.      failing to terminate or otherwise discipline Defendant Amos, Craven, or
Burleson for their willful disregard of the safety and rights of Ms. Doe and
other young girls; or being deliberately indifferent thereto; and

c.      through other actions, inactions, and deliberate indifference.

101.    Defendant School Board had actual knowledge of the discrimination against Ms.
Doe after the arrest of Defendant Alexander.

102.    Defendant School Board and BCPS's personnel, including Defendants Amos

Craven, and Burleson, had actual knowledge and the authority to take corrective action to

provide, offer, recommend, or coordinate adequate health, psychological, counseling, and

academic assistance and services to Ms. Doe to help minimize the harm suffered due to the

discrimination and harassment, including sexual assaults, abuse, and exploitation, and chose not

to do so.

103.    As a direct and proximate result of Defendants' actions, inactions, and deliberate

indifference, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be

compensated, including but not limited to:

    a.    past, present, and future physical and psychological pain, suffering, and
          impairment;

    b.    medical bills, counseling, and other costs and expenses for past and future
          medical and psychological care;

    c.    impaired educational capacity;

    d.    attorneys' fees and costs; and

    e.    such other and further relief that this Court deems just and proper.

104.    Ms. Doe respectfully requests the Court grant the relief she is entitled, as

enumerated in the preceding paragraph, to the extent allowable by law.


**COUNT III**
**Violation of 42 U.S.C. § 1983**
**Deprivation of Educational Property Rights – Special Relationship**
**(Defendants School Board, Amos, Craven, and Burleson)**

105.    Plaintiff incorporates all preceding paragraphs into this Count by reference as

though fully restated herein.

106.     Defendants Alexander, Amos, Craven, and Burleson were at all relevant times employees of Defendant School Board, acting under of color of state law, empowered and required by the State of North Carolina to, among other things, ensure an open and safe environment for educational services.

107.     Defendants School Board, Amos, Craven, and Burleson created a danger through their adoption and perpetuation of a practice and de facto policy that permitted Defendant Alexander, under color of law, to remove preadolescent girls, including Ms. Doe, from regular school activities and restrain their liberty through false imprisonment and seclusion.

108.     When removed from regular activities and falsely imprisoned by Defendant Alexander under color of law, Defendant Alexander was in custody and complete control of Ms. Doe and his other preadolescent victims.

109.     This practice and de facto policy rendered Ms. Doe and other preadolescent victims unable to care for themselves.

110.     The custody and control Defendant Alexander was permitted to exercise over Ms. Doe and his other victims by virtue of the practice and de facto policy adopted and perpetuated by Defendants School Board, Amos, Craven, and Burleson created a special relationship whereby Defendants were required to protect Ms. Doe and provide for her basic human needs and safety.

111.     Defendants Amos, Craven, and Burleson witnessed or otherwise had actual and/or constructive knowledge of Defendant Alexander's ongoing deprivation of Ms. Doe's constitutionally protected property interests in educational benefits.

112.     Defendants School Board, Amos, Craven, and Burleson deliberately failed to provide for Ms. Doe and the other victims' basic human needs by adopting and perpetuating

practices and de facto policies that permitted Defendant Alexander to remove her from school curriculum activities, thus failing to provide a safe environment for educational services, effectively denying her access to educational services provided by Hildebran and unlawfully depriving her of her educational rights.

113.    The acts by Defendants constitute a disregard for, and deliberate indifference to, Ms. Doe's wellbeing and her constitutionally protected property interests in educational benefits under the Fourteenth Amendment to the United States Constitution.

114.    Further, Defendants School Board, Amos, Craven, and Burleson, created a dangerous situation for Ms. Doe and other students through their policies, practices, customs, and regulations of disregarding reported, or otherwise known, situations of inappropriate and sexually abusive conduct by teachers against students.

115.    Defendants' denial of Ms. Doe's educational rights violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

116.    As a direct and proximate result of such misconduct and deliberate indifference, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

        a.    past, present, and future physical and psychological pain, suffering, and impairment;

        b.    medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

        c.    impaired educational capacity;

d.     exemplary damages;

e.     attorneys' fees and costs; and

f.     such other and further relief that this Court deems just and proper.

117.    Ms. Doe respectfully requests the Court grant the relief she is entitled, as enumerated in the preceding paragraph, to the extent allowable by law.

**COUNT IV**
**Violation of 42 U.S.C. § 1983**
**Deprivation of Educational Property Rights – State-Created Danger**
**(Defendants School Board, Amos, Craven, and Burleson)**

118.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

119.    Defendants' practice and de facto policy of allowing teachers like Defendant Alexander free reign to excuse preadolescent girls from regular school activities and falsely imprison, seclude, and confine them with him in rooms where he could sexually abuse them and create child-abuse images created a danger for Ms. Doe and other BCPS students.

120.    This practice and de facto policy directly created the danger of improper conduct, including sexual abuse and creation of child-abuse images, which danger was realized by Ms. Doe and Defendant Alexander's other preadolescent victims.

121.    This practice and de facto policy effectively denied Ms. Doe's constitutional right to educational services.

122.    Defendants' denial of Ms. Doe's educational rights violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

123.     As a direct and proximate result of such misconduct and deliberate indifference,

Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated,

including but not limited to:

a.     past, present, and future physical and psychological pain, suffering, and

impairment;

b.     medical bills, counseling, and other costs and expenses for past and future

medical and psychological care;

c.     impaired educational capacity;

d.     exemplary damages;

e.     attorneys' fees and costs; and

f.     such other and further relief that this Court deems just and proper.

124.     Ms. Doe respectfully requests the Court grant the relief she is entitled, as

enumerated in the preceding paragraph, to the extent allowable by law.


**COUNT V**
**Violation of 42 U.S.C. § 1983**
**Deprivation of Educational Property Rights – Failure to Train**
**(Defendants School Board, Amos, Craven, and Burleson)**

125.     Plaintiff incorporates all preceding paragraphs into this Count by reference as

though fully restated herein.

126.     At all relevant times, Defendants School Board, Amos, Craven, and Burleson,

who were policy-makers and administrators, had a duty to train themselves and others

concerning BCPS policies on reporting known or suspected abuse of students like Ms. Doe.

127.     At all relevant times, Defendants School Board, Amos, Craven, and Burleson who

were policy-makers and administrators had a duty to train themselves and others concerning

signs of abuse and inappropriate conduct by BCPS employees like Defendant Alexander against BCPS students like Ms. Doe.

128.    At all relevant times, Defendants School Board, Amos, Craven, and Burleson were policy-makers and administrators had a duty to train themselves and others regarding written policies that would prevent or prohibit actions like those taken by Defendant Alexander when he repeatedly removed Ms. Doe and others from regular school activities, falsely imprisoned them, secluded and confined them with him, sexually abused them, and created child-abuse images.

129.    Defendants School Board, Amos, Craven, and Burleson who were policy-makers and administrators otherwise failed to train themselves and other BCPS employees.

130.    Defendants School Board's, Amos', Craven's, and Burleson's failure to train effectively denied Ms. Doe's constitutionally protected educational property rights.

131.    Defendants' denial of Ms. Doe's educational rights violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

132.    As a direct and proximate result of this failure to train, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

        a.    past, present, and future physical and psychological pain, suffering, and impairment;

        b.    medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.     impaired educational capacity;

d.     exemplary damages;

e.     attorneys' fees and costs; and

f.     such other and further relief that this Court deems just and proper.

133.     Ms. Doe respectfully requests the Court grant the relief she is entitled, as enumerated in the preceding paragraph, to the extent allowable by law.

## COUNT VI
## Violation of 42 U.S.C. § 1983
## Deprivation of Educational Property Rights
## (Defendant Alexander)

134.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

135.     Defendant Alexander was at all relevant times acting under color of law through his position of authority as an elementary school teacher.

136.     Defendant Alexander's actions of removing Ms. Doe and his other preadolescent victims from regular school activities, confining them with him, sexually abusing them, and creating child-abuse images, effectively denied her constitutional right to educational services.

137.     Defendants' denial of Ms. Doe's educational rights violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

138.     As a direct and proximate result of Defendant Alexander's misconduct, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

      a.     past, present, and future physical and psychological pain, suffering, and impairment;

      b.     medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.     impaired educational capacity;

      d.     exemplary damages;

      e.     attorneys' fees and costs; and

      f.     such other and further relief that this Court deems just and proper.

139.    Ms. Doe respectfully requests the Court grant the relief she is entitled, as enumerated in the preceding paragraph, to the extent allowable by law.


**COUNT VII**
**Violation of 42 U.S.C. § 1983**
**Deprivation of Right to Bodily Integrity – Special Relationship**
**(Defendants School Board, Amos, Craven, and Burleson)**

140.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

141.    Defendants Alexander, Amos, Craven, and Burleson were at all relevant times employees of Defendant School Board, acting under of color of state law, empowered and required by the State of North Carolina to, among other things, ensure an open and safe environment for educational services.

142.    Defendants School Board, Amos, Craven, and Burleson created a danger through their adoption and perpetuation of a practice and de facto policy that permitted Defendant Alexander, under color of law, to remove preadolescent girls, including Ms. Doe, from regular school activities and restrain their liberty through false imprisonment and seclusion.

143.     When removed from regular activities and falsely imprisoned by Defendant Alexander under color of law, Defendant Alexander was in custody and complete control of Ms. Doe and his other victims.

144.     This practice and de facto policy rendered Ms. Doe and other preadolescent victims unable to care for themselves.

145.     The custody and control Defendant Alexander was permitted to exercise over Ms. Doe and his other victims by virtue of the practice and de facto policy adopted and perpetuated by Defendants School Board, Amos, Craven, and Burleson created a special relationship whereby Defendants were required to protect her and provide for her basic human needs and safety.

146.     Defendants Amos, Craven, and Burleson witnessed or otherwise had actual knowledge of Defendant Alexander's ongoing deprivation of Ms. Doe's constitutional right to bodily integrity.

147.     Defendants School Board Amos, Craven, and Burleson deliberately failed to provide for Ms. Doe's and the other victims' basic human needs by adopting and perpetuating practices and de facto policies that permitted Defendant Alexander to remove her from school curriculum activities, thus failing to provide a safe environment for educational services, effectively denying her constitutional right to bodily integrity.

148.     The acts by Defendants violated Ms. Doe's constitutionally protected right to bodily integrity.

149.     Defendants' denial of Ms. Doe's right to bodily integrity violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and

directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

150.     As a direct and proximate result of such misconduct and deliberate indifference, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

      a.     past, present, and future physical and psychological pain, suffering, and impairment;

      b.     medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.     impaired educational capacity;

      d.     exemplary damages;

      e.     attorneys' fees and costs; and

      f.     such other and further relief that this Court deems just and proper.

151.     Ms. Doe respectfully requests the Court grant the relief she is entitled, as enumerated in the preceding paragraph, to the extent allowable by law.

**COUNT VIII**
**Violation of 42 U.S.C. § 1983**
**Deprivation of Right to Bodily Integrity – State-Created Danger**
**(Defendants School Board, Amos, Craven, and Burleson)**

152.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

153.     Defendants' practice and de facto policy of allowing teachers like Defendant Alexander free rein to excuse preadolescent girls from regular school activities and falsely

imprison, seclude, and confine them with him in rooms where he could sexually abuse them and create child-abuse images created a danger for Ms. Doe and other BCPS students.

154.    This practice and de facto policy directly created the danger of improper conduct, including sexual abuse and creation of child-abuse images, which danger was realized by Ms. Doe and Defendant Alexander's other preadolescent victims.

155.    This practice and de facto policy effectively denied Ms. Doe's constitutional right to bodily integrity.

156.    Defendants' practice and de facto policy demonstrated disregard for, and deliberate indifference to, Ms. Doe's wellbeing and her constitutionally protected right to bodily integrity under the Fourteenth Amendment to the United States Constitution.

157.    Defendants' denial of Ms. Doe's right to bodily integrity violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

158.    As a direct and proximate result of such misconduct and deliberate indifference, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

      a.    past, present, and future physical and psychological pain, suffering, and impairment;

      b.    medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.    impaired educational capacity;

      d.    exemplary damages;

e.     attorneys' fees and costs; and

f.     such other and further relief that this Court deems just and proper.

159.     Ms. Doe respectfully requests the Court grant the relief she is entitled, as enumerated in the preceding paragraph, to the extent allowable by law.

## COUNT IX
### Violation of 42 U.S.C. § 1983
### Deprivation of Right to Bodily Integrity – Failure to Train
### (Defendants School Board, Amos, Craven, and Burleson)

160.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

161.     At all relevant times, Defendants School Board, Amos, Craven, and Burleson were policy-makers and administrators who had a duty to train themselves and others concerning BCPS policies on reporting known or suspected abuse of students like Ms. Doe.

162.     At all relevant times, Defendants School Board, Amos, Craven, and Burleson were policy-makers and administrators who had a duty to train themselves and others concerning signs of abuse and inappropriate conduct by BCPS employees like Defendant Alexander against BCPS students like Ms. Doe.

163.     At all relevant times, Defendants School Board, Amos, Craven, and Burleson were policy-makers and administrators who had a duty to train themselves and others regarding written policies that would prevent or prohibit actions like those taken by Defendant Alexander when he repeatedly removed Ms. Doe and others from regular school activities, falsely imprisoned them, secluded and confined them with him, sexually abused them, and created child-abuse images.

164.     Defendants School Board, Amos, Craven, and Burleson were policy-makers and administrators who otherwise failed to train themselves and other BCPS employees.

165.     Defendants School Board, Amos, Craven, and Burleson failure to train effectively denied Ms. Doe's constitutionally protected right to bodily integrity.

166.     Defendants' failure to train demonstrated disregard for, and deliberate indifference to, Ms. Doe's wellbeing and her constitutionally protected right to bodily integrity under the Fourteenth Amendment to United States Constitution.

167.     Defendants' denial of Ms. Doe's right to bodily integrity violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

168.     As a direct and proximate result of this failure to train, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

      a.     past, present, and future physical and psychological pain, suffering, and impairment;

      b.     medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.     impaired educational capacity;

      d.     exemplary damages;

      e.     attorneys' fees and costs; and

      f.     such other and further relief that this Court deems just and proper.

169.     Ms. Doe respectfully requests the Court grant the relief she is entitled, as enumerated in the preceding paragraph, to the extent allowable by law.

**COUNT X**
**Violation of 42 U.S.C. § 1983**
**Deprivation of Right to Bodily Integrity**
**(Defendant Alexander)**

170.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

171.     Defendant Alexander was at all relevant times acting under color of law through his position of authority as an elementary school teacher.

172.     Defendant Alexander's actions of removing Ms. Doe and his other preadolescent victims from regular school activities, falsely imprisoning them, secluding and confining them with him, sexually abusing them, and creating child-abuse images, effectively denied Ms. Doe's constitutional right to bodily integrity.

173.     Defendant Alexander's actions violated Ms. Doe's constitutionally protected right to bodily integrity.

174.     Defendant Alexander's denial of Ms. Doe's right to bodily integrity violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

175.     As a direct and proximate result of Defendant Alexander's misconduct, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. past, present, and future physical and psychological pain, suffering, and impairment;

b. medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. impaired educational capacity;

d. exemplary damages;

e. attorneys' fees and costs; and

f. such other and further relief that this Court deems just and proper.

176. Ms. Doe respectfully requests the Court grant the relief she is entitled, as enumerated in the preceding paragraph, to the extent allowable by law.

**COUNT XI**
**Violation of North Carolina Constitution, Article I, § 19**
**Deprivation of Educational Property Rights**
**(Defendants School Board, Amos, Craven, and Burleson)**

177. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

178. Defendants Amos, Craven, and Burleson were at all relevant times employees of Defendant School Board, acting under of color of state law, empowered and required by the State of North Carolina to, among other things, ensure an open and safe environment for educational services.

179. Defendants failed to provide a safe environment for educational services. Defendants adopted and perpetuated a practice and de facto policy that permitted Defendant Alexander to remove Ms. Doe from school curriculum and activities with her classmates,

effectively denying her access to educational services provided by Hildebran and unlawfully depriving her of her educational rights.

180.    Defendants created a dangerous situation for Ms. Doe and other students through policies, practices, customs, and regulations that gave Defendant Alexander the power and authority, and allowed him to exercise it unchecked, to remove preadolescent girls from regular curriculum and activities and seclude and confine them with him long enough to abuse and film them.

181.    Defendants, under color of law, further created a dangerous situation for Ms. Doe and other students through their policies, practices, customs, and regulations of disregarding reported, or otherwise known, situations of inappropriate and sexually abusive conduct by teachers against students.

182.    Defendants' acts, policies, practices, and customs constituted disregard for, and deliberate indifference towards, Ms. Doe's wellbeing and her constitutionally protected property interests in educational benefits under Article I, § 19 of the North Carolina Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages, including but not limited to:

      a.    past, present, and future physical and psychological pain, suffering, and impairment;

      b.    medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.    impaired educational capacity;

      d.    exemplary damages;

      e.    attorneys' fees and costs; and

f.     such other and further relief that this Court deems just and proper.

183.    Ms. Doe respectfully requests the Court grant the relief she is entitled, as enumerated in the preceding paragraph, to the extent allowable by law.

## COUNT XII
### Violation of North Carolina Constitution, Article I, § 19
### Deprivation of Right to Bodily Integrity
### (Defendants School Board, Amos, Craven, and Burleson)

184.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

185.    Defendants, acting under of color of state law, were empowered and required by the State of North Carolina to, among other things, ensure students are free from sexual assaults by their teachers.

186.    Defendants deliberately failed to prevent the sexual assaults of Ms. Doe by Defendant Alexander, both before and after others complained to BCPS officials and employees about Defendant Alexander's obvious misconduct towards young students, resulting in further invasions of her bodily integrity and violating her rights under Article I, § 19 of the North Carolina Constitution.

187.    Defendants further created a dangerous situation for Ms. Doe and other students by adopting and perpetuating practices and de facto policies giving Defendant Alexander the power and authority, and allowing him to exercise it unchecked, to remove young girls from regular curriculum and activities and seclude and confine them with him long enough to abuse and film them.

188. Further, Defendants created a dangerous situation for Ms. Doe and other students through their policies, practices, customs, and regulations of disregarding reported, or otherwise known, situations of inappropriate and sexually abusive conduct by teachers against students.

189. The actions and inactions by Defendants displayed a total disregard for, and deliberate indifference to, Ms. Doe's bodily integrity. As a direct and proximate result of such misconduct and deliberate indifference, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.     past, present, and future physical and psychological pain, suffering, and impairment;

    b.     medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.     impaired educational capacity;

    d.     exemplary damages;

    e.     attorneys' fees and costs; and

    f.     such other and further relief that this Court deems just and proper.

190. Ms. Doe respectfully requests the Court grant the relief she is entitled, as enumerated in the preceding paragraph, to the extent allowable by law.

## COUNT XIII
### Violation of North Carolina Constitution, Article I, § 15
### Deprivation of Right to Education
### (Defendants School Board, Amos, Craven, and Burleson)

191. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

192.     Defendants, acting under color of state law, were empowered and required by the State of North Carolina to, among other things, guard and maintain the right to the privilege of an education under Article I, § 15 of the North Carolina Constitution, and further implemented under Article IX, § 2 of the North Carolina Constitution.

193.     Defendants demonstrated deliberate indifference to Defendant Alexander's pattern of isolating and sexually assaulting children, both before and after complaints to BCPS officials and employees regarding Defendant Alexander's obvious misconduct, resulting in interference with the Defendant's right to an education under Article I, § 15 of the North Carolina Constitution.

194.     Defendants further created a situation that deprived Ms. Doe and other students of their right to education by adopting and perpetuating practices and de facto policies giving Defendant Alexander the power and authority, and allowing him to exercise it unchecked, to remove young girls from regular curriculum and activities and seclude and confine them with him long enough to abuse and film them.

195.     Defendants' acts, policies, practices, and customs constituted disregard for, and deliberate indifference towards, Ms. Doe's wellbeing and her constitutionally protected right to education under Article I, § 15 of the North Carolina Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages, including but not limited to:

        a.     past, present, and future physical and psychological pain, suffering, and impairment;

        b.     medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.      impaired educational capacity;

d.      exemplary damages;

e.      attorneys' fees and costs; and

f.      such other and further relief that this Court deems just and proper.

196.    Ms. Doe respectfully requests the Court grant the relief she is entitled, as enumerated in the preceding paragraph, to the extent allowable by law.


## COUNT XIV
### State Law Claims
### (Defendants Amos, Craven, Burleson)

197.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

198.    Defendants Amos, Craven, and Burleson were, at all relevant times, employees, agents, or officials of BCPS.

199.    Defendants Amos, Craven, and Burleson, upon information and belief, knew or should have known that Defendant Alexander was engaging in inappropriate conduct with Ms. Doe and other preadolescent students.

200.    Defendants Amos, Craven, and Burleson had a duty, pursuant to non-discretionary, mandatory policies, to report the abuse against Ms. Doe or others to appropriate authorities and take such other lawful and reasonable actions to protect children under the complete care and custody of the school.

201.    Defendants Amos, Craven, and Burleson did not report pursuant to those policies.

202. Defendants Amos, Craven, and Burleson, through their failure to report and other acts or omissions, were deliberately indifferent to the abuse Defendant Alexander was perpetrating against Ms. Doe and others preadolescent students.

203. As a direct and proximate result of Defendants Amos, Craven, and Burleson's negligence and deliberate indifference, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

      a.     past, present, and future physical and psychological pain, suffering, and impairment;

      b.     medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.     impaired educational capacity;

      d.     exemplary damages;

      e.     attorneys' fees and costs; and

      f.     such other and further relief that this Court deems just and proper.

204. Ms. Doe respectfully requests the Court grant the relief she is entitled, as enumerated in the preceding paragraph, to the extent allowable by law.

**COUNT XV**
**State Law Claims**
**(Defendant Alexander)**

205. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

206.     Defendant Alexander's conduct in removing Ms. Doe from school activities, falsely imprisoning her, sexually abusing her, creating child-abuse images of her, and distributing such images worldwide caused great injury to Ms. Doe.

207.     Defendant Alexander's conduct was not consented to, was offensive, and caused bodily harm.

208.     Defendant Alexander further placed Ms. Doe, on multiple occasions, in imminent fear of impending peril.

209.     Defendant Alexander's intentional conduct was outrageous and caused Ms. Doe extreme mental and emotional distress.

210.     As a direct and proximate result of Defendant Alexander's actions, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.     past, present, and future physical and psychological pain, suffering, and impairment;

    b.     medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.     impaired educational capacity;

    d.     exemplary damages;

    e.     attorneys' fees and costs; and

    f.     such other and further relief that this Court deems just and proper.

211.     Ms. Doe respectfully requests the Court grant the relief she is entitled, as enumerated in the preceding paragraph, to the extent allowable by law.

Respectfully submitted, this the 24th day of October, 2025.

By: _____ s/Brad A. Stark _____
Brad A. Stark
N.C. Bar No. 34228
Fisher Stark, P.A.
99 McDowell Street
Asheville, North Carolina 28801
Telephone: (828) 505-4300
Fax: (828) 505-4302
E-mail: brad@fisherstark.com

Peter C. Grenier
(Admission subject to approval)
John E. Antishin
(Admission subject to approval)
Grenier Law Group, PLLC
1920 L Street NW
Suite 750
Washington, DC 20036
Telephone: (202) 768-9600
Fax: (202) 768-9604
Email: pgrenier@grenierlawgroup.com

**COUNSEL FOR PLAINTIFF**